

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00336-CV

**IN THE MATTER OF C.H.R.**, a Juvenile

From the 289th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-JUV-00495
The Honorable Carmen Kelsey, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Karen Angelini, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  March 11, 2015

AFFIRMED

Appellant C.H.R. appeals the trial court's order transferring him from the Texas Juvenile Justice Department ("TJJD") to the Texas Department of Criminal Justice–Institutional Division ("TDCJ"). On appeal, C.H.R. contends the trial court abused its discretion in ordering the transfer rather than placing him on parole. We affirm.

### BACKGROUND

In March 2012, C.H.R., a sixteen-year-old juvenile, stabbed an individual in the chest three times. The State filed a petition alleging delinquent conduct, and on June 8, 2012, the trial court found C.H.R. engaged in delinquent conduct by committing the offense of aggravated assault with a deadly weapon. In its order of disposition, the trial court ordered C.H.R. committed to TJJD for eight years with a possible transfer to TDCJ.

C.H.R. entered TJJD on June 26, 2012. On February 27, 2014, the Executive Director of TJJD sent the trial court a letter, requesting a transfer hearing. The director requested C.H.R. be transferred to TDCJ because he was eighteen-years-old, had not completed his sentence, and his conduct was such that a transfer was necessary for the welfare of the community. The trial court held the statutorily mandated hearing and thereafter, ordered C.H.R. transferred to TDCJ to complete his eight-year sentence. C.H.R. perfected this appeal.

## ANALYSIS

As noted above, C.H.R. raises a single issue on appeal. He contends the trial court abused its discretion in ordering him transferred to TDCJ as opposed to placing him on parole.

### *Standard of Review*

We review the trial court's decision to transfer a juvenile from TJJD to TDCJ under an abuse of discretion standard. *In re L.G.G.*, 398 S.W.3d 852, 855 (Tex. App.—San Antonio 2012, no pet.); *In re N.K.M.*, 387 S.W.3d 859, 864 (Tex. App.—San Antonio 2012, no pet.); A trial court abuses its discretion when it acts arbitrarily or acts without reference to guiding rules and principles of law. *N.K.M.*, 387 S.W.3d at 864. We must review the entire record to determine whether an abuse of discretion occurred. *Id.*; *In re D.L.*, 198 S.W.3d 228, 229 (Tex. App.—San Antonio 2006, pet. denied). There need only be some evidence in the record to support the trial court's decision. *N.K.M.*, 386 S.W.3d at 864; *D.L.*, 198 S.W.3d at 229. We will neither substitute our judgment for that of the trial court, nor will we reverse the trial court's ruling simply because we disagree with its decision. *In re L.G.G.*, 398 S.W.3d at 855.

### *Application*

Section 54.11 of the Texas Family Code sets forth the procedure for transferring a juvenile serving a determinate sentence from TJJD to TDCJ. TEX. FAM. CODE ANN. § 54.11 (West 2014).

In determining whether to transfer a juvenile from TJJD to TDCJ, the trial court may consider the following factors:

(1) the experiences and character of the person before and after commitment to the Texas Juvenile Justice Department or post-adjudication secure correctional facility;

(2) the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed;

(3) the abilities of the person to contribute to society;

(4) the protection of the victim of the offense or any member of the victim's family;

(5) the recommendations of the Texas Juvenile Justice Department, county juvenile board, local juvenile probation department, and prosecuting attorney;

(6) the best interests of the person; and

(7) any other factor relevant to the issue to be decided.

*Id.* § 54.11(k). A trial court need not consider all factors listed and may consider other factors not listed in section 54.11(k) if they are relevant. *In re J.J.*, 276 S.W.3d 171, 178 (Tex. App.—Austin 2008, pet. denied). Additionally, the trial court may give different weights to the factors considered. *Id.* The court may also consider written reports of TJJD employees and professional consultants in addition to the testimony of witnesses. TEX. FAM. CODE ANN. § 54.11(d); *see also In re D.L.*, 198 S.W.3d at 230.

At C.H.R.'s transfer hearing, the trial court took judicial notice of a summary report prepared by Leonard John Cucolo, the TJJD court liaison. The court also took judicial notice of its file, which contains a fitness evaluation, a responsibility evaluation, and the determinate sentencing report prepared by the probation officer. The trial court heard live testimony from a single State witness, Mr. Cucolo.

After providing the court with some general background regarding C.H.R.'s original offense and his entry into TJJD, Mr. Cucolo testified about C.H.R.'s academic performance. Mr.

Cucolo stated that during his twenty-one months at TJJD, C.H.R.'s academic performance was poor. He testified C.H.R. made absolutely no progress while at TJJD. Specifically, C.H.R. entered TJJD with eight high school credits. He failed to earn a single additional credit while at TJJD. According to C.H.R., his poor academic performance was based on his low intelligence, which he contends makes him ill-suited for TDCJ and the type of education that institution provides. Admittedly, the record shows C.H.R. tested within the "extremely low to borderline" intelligence range. However, the evidence suggests C.H.R.'s low to borderline intelligence played little part in his academic failure at TJJD — or prior to his commitment.

Mr. Cucolo testified C.H.R. made no academic progress because of his poor attitude and lack of motivation. C.H.R.'s teachers reported he was disruptive in class and failed to participate in assigned classwork. Prior to his commitment, C.H.R. also exhibited problems in the traditional school setting. He would refuse to do classwork, walked out of class, skipped school, was disrespectful to teachers and staff, and once hit a teacher. Mr. Cucolo opined that despite his lower level of intelligence, C.H.R. could have succeeded academically at TJJD. Mr. Cucolo believed C.H.R. had the ability to achieve academically through vocational training or by way of a specialized G.E.D., but his frequent class disruptions and refusal to complete or participate in assignments made that impossible. The educational staff provided C.H.R. with individualized attention, but C.H.R. put forth no constructive effort.

With regard to behavior, it too was poor, both prior to his admission to TJJD and while in TJJD. The record indicates C.H.R. had a troubled history long before his commitment to TJJD. C.H.R.'s mother noted aggressive behavior in her child since early childhood. At the age of two, C.H.R. reportedly kept knives under his bed. At the age of five, C.H.R. punched his mother in the face. C.H.R. also broke his sister's nose and killed her hamster with a knife. He then smeared the hamster's blood on his face and laughed. The incidents grew worse and more threatening with

C.H.R. holding a knife to his mother's throat and laughing, telling her he would kill the family. He was often removed from his home, where he witnessed extensive domestic violence upon his mother by his father and former stepfather. He was returned home at one point, but attempted to stab his sister. Eventually, C.H.R.'s mother relinquished custody of her son, fearing for her family's safety. C.H.R.'s violent behavior continued in foster care, residential treatment centers, and emergency shelters. The record shows C.H.R. frequently exhibited severe, violent behavioral problems, including breaking the arm of a staff member in a residential facility.

Mr. Cucolo testified that after C.H.R.'s commitment to TJJD, he continued his prior behavior pattern. From the outset, C.H.R.'s behavior was poor, and it remained consistently poor during his twenty-one months at TJJD. Mr. Cucolo stated C.H.R. was enrolled in the facility's drug and alcohol rehabilitation program as well as its violent offender program; however, in fewer than three months C.H.R. was discharged from the latter program as a "treatment failure" due to his behavior. In addition, Mr. Cucolo told the court C.H.R. never improved beyond TJJD's lowest level of categorization for inmates in the prison system's rehabilitation program.

C.H.R. continued to exhibit violent behavior over the course of his confinement at TJJD. Specifically, during C.H.R.'s twenty-one month stay, there were 107 documented incidents of misconduct — some incidents were extremely violent. Sixty-five of these incidents required a security report. These included an escape attempt, unauthorized physical contact with other youths, and assault causing bodily injury to staff. He threw bodily fluids at individuals and engaged in "many inappropriate" acts of "sexual misconduct." The two most serious infractions involved an assault on a public servant and retaliation, ultimately resulting in criminal convictions as an adult.

In his written report to the court, as well as in his testimony, Mr. Cucolo explained the details of the offenses that resulted in criminal convictions. With respect to the first offense —

assault on a public servant — Mr. Cucolo noted staff "had to use force to get [C.H.R.] into his cell." Once in the cell, C.H.R. "swung and hit" a staff member on the lower chin and spat on another. As for the second offense — retaliation — C.H.R threatened a staff member with bodily harm because the staff member threatened to refer C.H.R. to the security unit. C.H.R. ultimately pled guilty to both charges and was sentenced to two concurrent six-year sentences in TDCJ. C.H.R. was transferred to TDCJ, where he presently resides.[1]

C.H.R. contends the record, specifically that relating to his past experiences at home and in foster care and other facilities show his behavior is a result of low intelligence and mental illness. Both deficiencies, C.H.R. claims, would be better treated outside the prison system, perhaps with family. Admittedly, TDCJ might not provide the best educational and treatment setting; however, the record establishes C.H.R. has engaged in serious, violent behavior when placed in his home and alternative facilities. Indeed there exists considerable evidence it was not the environment or setting that caused C.H.R.'s behavioral issues, but his attitude. As stated above, C.H.R's refusal to cooperate with the individualized attention of the educational staff illustrates how his attitude — not low intelligence — negated any potential progress. The record also tends to refute C.H.R.'s contention that more suitable environments might be available. Specifically, the record establishes C.H.R. had been previously placed in seventeen different facilities or foster homes prior to his commitment to TJJD. The facilities included residential treatment centers, psychiatric hospitals, emergency shelters, and the like. None proved capable of addressing C.H.R.'s educational and behavioral issues, resulting in constant transfers. There is nothing in the record to show these other facilities failed to provide necessary care. Rather, it was a history of "treatment noncompliance," ranging from aggressive behavior to running away from "these settings."

---

[1] As a result of his adult, criminal convictions, even if the trial court had granted parole to C.H.R., he would not be released because he is currently serving time in TDCJ. However, the transfer will result in a longer term in TDCJ.

C.H.R. also suggests his home is a more suitable environment than TDCJ, arguing he could receive help and care from his family. The record notes C.H.R.'s mother provided a positive report with regard to C.H.R.'s last home visit. However, past events in the home as detailed above suggest C.H.R. would not receive the care required given his almost continuous acts of violence.

Considering the nature of C.H.R.'s offense, his history of poor behavior, his continued poor behavior during his time in TJJD — including acts of violence resulting in new, adult convictions — as well as the other applicable factors set out in section 54.11(k) of the Family Code, we cannot say the trial court abused its discretion in ordering C.H.R. transferred to TJJD. The record shows C.H.R. acted with aggression and violence despite warnings from the outset that poor behavior would likely result in transfer rather than parole. Mr. Cucolo provided the court with detailed testimony supporting his recommendation for transfer. Indeed, Mr. Cucolo stated the behavior leading to the two adult convictions would alone be sufficient for his transfer recommendation. The evidence is such that contrary to C.H.R.'s claim that alternative environments might be more suitable given his history and mental state, the trial court could have determined C.H.R.'s severe and continuous behavioral problems suggest a transfer to TDCJ to serve time in addition to the adult sentences is a more appropriate disposition than release on parole.

CONCLUSION

Based on the evidence, we hold there was some evidence to support the trial court's decision to transfer C.H.R. to TDCJ rather than release him on parole. Because the record provides sufficient evidence to support the trial court's decision, we hold the trial court did not abuse its discretion and overrule C.H.R.'s issue. *See N.K.M.*, 386 S.W.3d at 864; *D.L.*, 198 S.W.3d at 229. Accordingly, we affirm the trial court's order.

Marialyn Barnard, Justice